## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JIMMIE RAY MORROW, #26919-078, | § | |
| | § | |
| Petitioner, | § | CIVIL ACTION NO. 4:18-CV-00505- |
| v. | § | MAC-CAN |
| | § | CRIMINAL ACTION NO. 4:17-CR-00029- |
| UNITED STATES OF AMERICA, | § | SDJ-KPJ-1 |
| | § | |
| Respondent. | § | |
| | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

*Pro se* Movant Jimmie Ray Morrow filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, raising alleged constitutional violations concerning his conviction in the Eastern District of Texas, Sherman Division [Dkt. 1]. On July 17, 2018, this matter was assigned to United States District Judge Marcia A. Crone and the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge [Dkt. 2]. The Court determined that an evidentiary hearing was necessary and held such hearing on January 6, 2021 [Dkt. 25]. After considering the Motion [Dkt. 1], Government's Response [Dkt. 7], Movant's Reply [Dkt. 9], the testimony and evidence provided at Hearing [Dkt. 25], and all other relevant filings, the Court recommends the Motion [Dkt. 1] be **DENIED** and this case be **DISMISSED WITH PREJUDICE**.

### RELEVANT PROCEDURAL HISTORY

On February 9, 2017, a Grand Jury returned an Indictment charging Movant in twelve counts: Count One–violation of 18 U.S.C. § 2113(a), Bank Robbery; Count Two–violation of 18

REPORT AND RECOMMENDATION – Page 1

U.S.C. § 924(c), Possession, Use or Brandishing of a Firearm in Furtherance of a Crime of Violence; Count Three–violation of 18 U.S.C. §§ 2113(a) and 2, Bank Robbery and Aiding and Abetting; Count Four–violation of 18 U.S.C. § 924(c), Possession, Use or Brandishing of a Firearm in Furtherance of a Crime of Violence; Count Five–violation of 18 U.S.C. §§ 2113(a) and 2, Bank Robbery and Aiding and Abetting; Count Six–violation of 18 U.S.C. §§ 924(c) and 2, Possession of a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting; Count Seven–violation of 18 U.S.C. §§ 2113(a) and 2, Bank Robbery and Aiding and Abetting; Count Eight–violation of 18 U.S.C. § 924(c), Possession, Use or Brandishing of a Firearm in Furtherance of a Crime of Violence; Count Nine–violation of 18 U.S.C. § 2113(a), Bank Robbery; Count Ten–violation of 18 U.S.C. § 924(c), Possession, Use or Brandishing of a Firearm in Furtherance of a Crime of Violence; Count Eleven–violation of 18 U.S.C. § 2113(a), Bank Robbery; and Count Twelve–violation of 18 U.S.C. § 924(c), Possession, Use or Brandishing of a Firearm in Furtherance of a Crime of Violence.  *United States v. Morrow*, No. 4:17-cr-00029-SDJ-KPJ-1 (E.D. Tex. Feb. 9, 2017), ECF No. 36.[1][2]  On May 8, 2017, the Government filed a Notice of Plea Agreement, informing the Court that the Government and Movant had entered into a plea agreement relating to the pending charges.  *Id.* ECF No. 51.  On May 25, 2017, before the undersigned and alongside counsel, Richard Weaver and Micah Belden, Movant pleaded guilty to Counts Seven, Eight, Eleven, and Twelve of the Indictment pursuant to the written plea agreement.  *Id.* ECF No. 72.  Through the plea agreement, Movant pleaded guilty to two counts of bank robbery and two counts of "possessing, using or brandishing a firearm during and in relation to a crime of

---

[1] Federal Rule of Evidence 201 permits judicial notice of an "adjudicative fact" where the fact is "not subject to reasonable dispute because it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (quoting FED. R. EVID. 201(b)).  The Court takes judicial notice of Movant's criminal case in the Eastern District of Texas.
[2] The Indictment lists Movant's full name as "Jimmie Ray Morrow, Jr." [Dkt. 36].

REPORT AND RECOMMENDATION – Page 2

violence, namely bank robbery." *Id.* ECF No. 74 at 1.  Movant further stipulated to pay restitution to six different financial institutions in a total amount of $30,558.00.  *Id.* ECF No. 74 at 4-5. Contained in the plea agreement signed by Movant, and relevant to the instant Motion, are provisions entitled: "Waiver of Right to Appeal or Otherwise Challenge Sentence" and "Waiver of Right to Records[.]"  *Id.* at 5-6.  The Waiver of Right to Appeal or Otherwise Challenge Sentence states:

> Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds.  The defendant further agrees not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory maximum.  The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel.

*Id.*  The Waiver of Right to Records states:

> The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, of the Privacy Act, 5 U.S.C. § 552a.

*Id.* at 6.  On that same day, May 25, 2017, the undersigned entered Findings of Fact and Recommendation on Guilty Plea, finding that Movant, after consultation with his attorney, knowingly and voluntarily consented to the administration of the guilty plea in this case; that Movant was aware of the nature of the charges and the consequences of the plea; and that the plea of guilty was supported by an independent factual statement containing each of the essential elements of the offense.  *Id.* ECF No. 83 at 2-3.  On May 29, 2017, United States District Judge Marcia A. Crone adopted the undersigned's Findings of Fact and Recommendation on Guilty Plea, but deferred "acceptance of the plea agreement and plea agreement addendum until after review of the presentence report."  *Id.* ECF No. 85 at 1.

On August 22, 2017, appointed counsel, Richard Weaver, moved to withdraw as counsel because "[Movant] has requested Counsel to withdraw"[3]; he stated Counsel and Defendant "have had conflicts during the representation of Defendant to the extent that it may be in the interests of justice and Defendant's best interest for the Defendant to proceed through the sentencing process with the representation by Micah Belden." *Id.* ECF No. 95 at 1. The Court held a hearing on Richard Weaver's request to withdraw on August 29, 2017, wherein no Parties objected to the withdrawal. *Id.* ECF No. 103. On the same date, the Court granted Richard Weaver's Motion to Withdraw, leaving Micah Belden as sole counsel. *Id.* ECF No. 104. Hereinafter, the Court refers to Mr. Belden as Counsel.

The Probation Office prepared its initial Presentence Investigation Report and filed it with the Court on July 31, 2017. *Id.* ECF No. 91. Thereafter, on August 28, 2017, Movant, through Counsel, filed Objections to the Presentencing Investigation Report. *Id.* ECF No. 101 Sealed. The Final Presentence Investigation Report was then filed on September 11, 2017, along with the Sentencing Recommendation. *Id.* ECF Nos. 107, 108 Sealed. On October 30, 2017, Movant was sentenced to: 46 months imprisonment on Counts Seven and Eleven, to run concurrent with each other, with three years of supervised release on each count to run concurrent; 300 months imprisonment on Count Eight to run consecutive, with five years of supervised release to run concurrent; and 84 months imprisonment on Count Twelve to run consecutive, with five years of supervised release to run concurrent. *Id.* ECF No. 118. The Court's sentence was entered on the record the next day. *Id.* ECF No. 120. Movant did not file a direct appeal [Dkt. 1 at 1].

---

[3] Movant also sent multiple letters to the Court requesting that Richard Weaver be removed as his attorney, complaining about Richard Weaver's attitude towards Movant. *Id.* ECF Nos. 49, 53, 58, 87, 94. The Court held a hearing related to Movant's repeated requests on May 17, 2017, at which time the Court denied Movant's request for a new attorney, but appointed a second Criminal Justice Act Panel attorney, Mr. Belden, to assist in representing Movant. *Id.* ECF No. 60.

Then, on July 16, 2018, Movant filed the instant motion under 28 U.S.C. § 2255 [Dkt. 1].  *See* 28 U.S.C. § 2255(f) ("A 1-year period of limitation shall apply to a motion under this section.").

***28 U.S.C. § 2255 Motion***

In his Motion, Movant argues: (1) his Fifth and Sixth Amendment rights were violated as he was charged under a statute that is "categorically unconstitutional as [it] is void for vagueness [Dkt. 1 at 4]; (2) his Fifth and Sixth Amendment rights were violated through Counsel's failure to perfect a direct appeal [Dkt. 1 at 5]; and (3) his First, Fifth, and Sixth Amendment rights were violated as the waiver of his rights under the Freedom of Information Act and Privacy Act is unconstitutional [Dkt. 1 at 6].  Movant asks the Court to "appoint counsel to represent movant, hold an evidentiary hearing, and grant the 2255 motion" [Dkt. 1-1 at 8].  The Government filed a Response on October 1, 2018 [Dkt. 7], to which Movant replied on October 22, 2018 [Dkt. 9].  The Court found that a *Tapp* hearing[4] was required on the issue of whether Movant requested his counsel file an appeal on his behalf; the Court appointed counsel for the purpose of the *Tapp* hearing [Dkt. 20].[5]  On January 6, 2021, a *Tapp* hearing was held, where the Court heard testimony related to the alleged request for an appeal [Dkt. 25].

## FEDERAL HABEAS PROCEEDINGS STANDARD

A motion under 28 U.S.C. § 2255 motion, or request for "collateral review," is "fundamentally different from a direct appeal."  *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights

---

[4] *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

[5] The hearing was initially set to proceed on October 13, 2020 [Dkt. 20], however, Movant, who was imprisoned at the time in Arizona, was not transferred back to the Eastern District of Texas in time and the hearing had to be reset. The Court then reset the hearing for November 6, 2020.  *See docket generally*.  Again, Movant was not transported in time, and upon request of Movant to continue hearing [Dkt. 23], the hearing was reset to December 8, 2020 [Dkt. 24]. The Court was once again notified that "due to transportation delays, defendant will not be available for court on December 8, 2020."  *See docket generally.*  Movant was then reset for a *Tapp* hearing on January 6, 2021, which proceeded as scheduled.

and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). The role of § 2255 has been defined by the Fifth Circuit as follows:

> Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). "Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing 'cause' for the omission and 'actual prejudice' resulting from the error." *Walker v. United States*, No. 3:14-CR-0210-D (9), 2018 WL 4492939, at *3 (N.D. Tex. Aug. 27, 2018) (citing *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)), *report and recommendation adopted*, No. 3:14-CR-210-D (9), 2018 WL 4488825 (N.D. Tex. Sept. 19, 2018). However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, which is "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).

## 18 U.S.C. § 924(c)(3)(A) IS NOT UNCONSTITUTIONALLY VAGUE

Movant argues that he "is entitled to relief from his conviction and sentence because the statute under which the movant was sentenced is unconstitutional" [Dkt. 1-1 at 1]. Specifically,

REPORT AND RECOMMENDATION – Page 6

Movant argues that in light of the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), finding that the definition of "crime of violence" as used in 18 U.S.C. § 16(b) was unconstitutionally vague, then the same is necessarily true of the definition in 18 U.S.C. § 924(c) [Dkt. 1-1 at 2].  The Government responds that this is not the case, and that in fact, based on *Dimaya*, the Fifth Circuit has found only the residual clause of § 924(c) to be unconstitutionally vague [Dkt. 7 at 3].

In *Dimaya* the Supreme Court found that the definition of "crime of violence" used in 18 U.S.C. § 16(b), was unconstitutionally vague.  138 S. Ct. at 1223.  Section 16 defines a crime of violence as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16(b).  The Supreme Court held that the residual clause in § 16, subsection (b), was unconstitutionally vague because "the clause ha[s] both an ordinary-case requirement and an ill-defined risk threshold, [which] necessarily 'devolv[es] into guesswork and intuition,' invite[s] arbitrary enforcement, and fail[s] to provide fair notice."  *Dimaya*, 138 S. Ct. at 1223.  The Court found that "just like [Armed Career Criminal Act's] residual clause, § 16(b) 'produces more unpredictability and arbitrariness than the Due Process Clause tolerates[,]'" and is therefore void for vagueness.  *Id.*

In applying the same doctrine and principles to § 924(c), the Fifth Circuit has held "that § 924(c)'s residual clause is unconstitutionally vague."  *United States v. Davis*, 903 F.3d 483, 486 (5th Cir. 2018), *aff'd in part, vacated in part, remanded*, 139 S. Ct. 2319 (2019).  Section 924 defines crime of violence as "an offense that is a felony and":

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The Fifth Circuit in *Davis* held that "[b]ecause the language of the residual clause [in § 924(c)] and that in § 16(b) are identical, this court lacks the authority to say that, under the categorical approach, the outcome would not be the same." *Davis*, 903 F.3d at 486. Notwithstanding, the Fifth Circuit explicitly stated subsection (A) remains enforceable. *See id.* at 485 (finding that the elements clause, subsection (A), remains enforceable, relying on *Dimaya*). The Supreme Court subsequently agreed with the Fifth Circuit's "conclusion that § 924(c)(3)(b)"—the residual clause—"is unconstitutional vague." *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). But it made no reference to § 924(c)(3)(A)—the subsection Movant takes issue with here. Thus, the Fifth Circuit's clear instruction that the elements clause remains enforceable still controls.

Section 924(c) subjects to criminal liability and penalizes "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." *Garcia v. United States*, No. 2:19-CV-184-Z, 2020 WL 4005026, at *2 (N.D. Tex. June 22, 2020) (citing 18 U.S.C. § 924(c)), *report and recommendation adopted*, No. 2:19-CV-184-Z, 2020 WL 4001088 (N.D. Tex. July 15, 2020). When determining whether an offense is a crime of violence under § 924(c)(3)'s elements clause, a court is to look "only to the statutory definitions – i.e., the elements – of a defendant's offense, and not to the particular facts underlying the convictions." *United States v. Buck*, 847 F.3d 267, 274 (5th Cir.), *cert. denied*, 138 S. Ct. 149 (2017). The Fifth Circuit has specifically found that federal bank robbery under 18 U.S.C. § 2113(a) constitutes a crime of violence under § 924(c)(3)(A)'s elements clause.

*United States v. Smith*, 957 F.3d 590, 593-94 (5th Cir. 2020) (collecting cases), *cert. denied*, No. 20-5871, 2020 WL 6551848 (U.S. Nov. 9, 2020).

Here, Movant pleaded guilty to two counts of bank robbery under 18 U.S.C. § 2113(a) (Counts 7 and 11), and two counts of possession, use or brandishing of a firearm during a crime of violence (bank robbery) under 18 U.S.C. § 924(c)(1)(A)(iii) (Counts 8 and 12). *United States v. Morrow*, No. 4:17-cr-00029-SDJ-KPJ-1 (E.D. Tex. May 25, 2017), ECF No. 74 at 2-3. As the Fifth Circuit has explicitly stated, a charge under § 924(c)(3)(A), predicated on bank robbery as the crime of violence, falls under the (still) constitutional elements clause. *See Smith*, 957 F.3d at 593-94. Therefore, because Movant's federal bank robbery offense is a crime of violence under the elements clause, his sentencing related to the firearm charges survive Movant's habeas challenge. *See id.* at 594 (rejecting a movant's habeas challenge to the firearm convictions connected to his federal bank robbery offense); *United States v. James*, No. H-15-265-3, 2018 WL 2421998, at *6 (S.D. Tex. May 25, 2018) (rejecting the movant's habeas challenge because the movant's "conviction for armed bank robbery [under 18 U.S.C. § 2113] qualifies as a crime of violence under the [§ 924(c)(3)(A)] force clause" and because § 924(c)(3)(A) is not void for vagueness under *Dimaya*), *report and recommendation adopted*, No. 4:15-CR-00265-3, 2018 WL 3008683 (S.D. Tex. June 13, 2018).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Movant posits that his counsel "provided ineffective assistance for failing to perfect a direct appeal and further threatened the movant with a loss of opportunity to cooperate for a Fed. R. Crim. P. 35 reduction and an increase in his sentence to 120 years if such constitutional right was exercised" [Dkt. 1 at 5]. Movant elaborates "[a]s previously noted, the movant was convicted and sentenced under an unconstitutional law. Counsel failed to raise the issue in a direct appeal and

thus violated the 5th and 6th Amendments to the U.S. Constitution," [Dkt. 1-1 at 4], and "[a]n attorney's failure to file an appeal, always constitutes ineffective assistance of counsel" [Dkt. 1-1 at 5].  In his initial § 2255 filing, Movant does not aver, reference, or otherwise provide any evidence that he requested his counsel file an appeal; rather he appears to advance his counsel had a general duty to perfect an appeal of his criminal conviction.  The Government argues in response, that Movant's claim for ineffective assistance of counsel fails because: (1) an attorney is not ineffective for failing to raise a meritless argument [Dkt. 7 at 4], and (2) Movant "does not contend, or submit evidence, that he ever *requested* his attorney to file a notice of appeal" [Dkt. 7 at 5 (emphasis in original)].  Movant responded, and for the first time provided a letter purportedly mailed to Counsel on November 7, 2017, wherein he requests Counsel file an appeal on his behalf [Dkt. 9-3].  The Court held an evidentiary hearing to determine whether Movant is entitled to relief [Dkt. 25]; Lesley Brooks appeared on behalf of the Government, and Joseph Mongaras appeared on behalf of Movant.  At Hearing, the Court heard testimony from Mr. Belden (again, "Counsel"); Jimmie Morrow Sr. ("Mr. Morrow"), Movant's father; and Movant [Dkt. 25].  In order to fully understand the testimony detailed *infra*, the Court first details the relevant documents attached to the Parties' filings.

**Relevant Documents**

There are numerous documents relevant to Movant's request to vacate, set aside, or correct his sentence [Dkts. 8; 9-2; 9-3; 9-4; 9-5].

Attached to the Government's Response is the affidavit of Counsel, wherein he swears he "advised [Movant] of his right to appeal both before and after the plea agreement was signed.  He was additionally advised prior to and at sentencing about his right to appeal, and that he waived his right to appeal" [Dkt. 8].  Counsel further swears, "I never received anything from [Movant]

within the time for filing a notice of appeal requesting that a notice be filed, nor any communication he desired to appeal his case" [Dkt. 8].

Attached to Movant's reply is an affidavit signed by Mr. Morrow, stating in relevant part: that he was discouraged from attending his son's court proceedings; that he was told by his son's attorney[6] that he should persuade Movant to take the plea deal; that he was also told Movant would only receive twelve years imprisonment if he cooperated and pled guilty; Movant's attorney was "very poorly prepared at sentencing"; and that Mr. Morrow believes that his son "acted under duress and coercion in accepting the plea agreement in this case" [Dkt. 9-2 at 2-3]. Mr. Morrow's affidavit was executed on October 11, 2018 [Dkt. 9-2 at 3]. Notably, Mr. Morrow makes no mention whatsoever of asking Counsel to file an appeal on his son's behalf.

Movant next provides a letter dated November 7, 2017, purportedly mailed to Counsel [Dkt. 9-3]. Therein, Movant requests Counsel "[a]ppeal the conviction now" [Dkt. 9-3 at 2]. In his eight-page letter, Movant requests Counsel file an appeal in five different places [Dkt. 9-3 at 2-3, 6, 9]. Movant also asks a plethora of questions and lists a number of a grievances against Counsel, asserting all the ways in which he is dissatisfied with Counsel's representation [Dkt. 9-3]. No envelope or proof of mailing is attached to the letter. To date, notwithstanding the Court's inquiry, no proof of mailing of this letter has been able to be provided to the Court.

Movant also attaches a letter he sent to the Court in January 2018, filed in his criminal case, to his response [Dkt. 9-4].[7] [8]  In this letter, Movant asserts he has "many concerns [and]

---

[6] It is unclear throughout Mr. Morrow's affidavit whom Mr. Morrow is discussing when he names "his son's attorney" [Dkt. 9-2], including whether he was referring to Mr. Weaver or Counsel. Mr. Morrow was unable to clarify this issue when questioned about it at Hearing.

[7] Again, Movant was sentenced on October 30, 2017, and the judgment was entered October 31, 2017. Thus, this letter was sent approximately three months after Movant was sentenced.

[8] This letter was filed in Movant's criminal case on February 6, 2018. *United States v. Morrow*, No. 4:18-cv-00505-MAC-CAN (E.D. Tex. Feb. 6, 2018), ECF No. 122. The envelope shows that this letter was received by the post office on January 31, 2018 and received by the Court on February 5, 2018. *Id.* ECF No. 122-1.

unanswered questions" related to his case and plea deal [Dkt. 9-4 at 1]. Movant goes on to list numerous questions and statements; relevant herein is his question regarding his right to appeal [Dkt. 9-4 at 3]. Movant asks: "What are my right's [sic] to APPEAL? I have been told by both attorney's [sic] (I cannot APPEAL anything) [and] then (I do have the right to APPEAL). If I do what can I [do and] how? Will there be RECOURSE for doing so?" [Dkt. 9-4 at 3]. Plaintiff notably never filed a notice of appeal on his own behalf, nor requested an out-of-time appeal.

The final attachment to Movant's response is the letter he received from Counsel in response to his January 2018 letter to the Court [Dkt. 9-5]. The letter to Movant from Counsel was sent February 25, 2018 [Dkt. 9-5].[9] Therein, Counsel states:

> I explained to you your rights under the plea agreement more than once . . . You had no rights to appeal as outlined in the plea agreement except for ineffective assistance of counsel and failure of the court to sentence you within the punishment range, neither o[f] which happened. As we discussed, your desire was to work on cooperation.

[Dkt. 9-5 at 2]. Counsel further informed Movant that his options at this point were to "wait for the cooperation to come as it may" or "file a 2255 motion alleging ineffective assistance of counsel or failure to be sentenced in the statutory range" [Dkt. 9-5 at 2-3].

**Evidentiary Hearing**

### Counsel's Testimony

Counsel testified that he has been practicing law for fifteen years in the state of Texas, has been board certified in criminal law for about ten years, and was placed on the CJA panel in November of 2006. Counsel stated that his practice has been roughly ninety percent criminal, and that he represents clients in both state and federal court. Counsel also explained that he has done

---

[9] Although the letter is actually dated February 25, 2017, Counsel clarified at Hearing that he sent the letter in February 2018 and had simply misdated the letter. There was no challenge to this assertion at Hearing.

REPORT AND RECOMMENDATION – Page 12

criminal appellate work and has worked on a "fair amount" of writs and ineffective assistance of counsel claims against other attorneys.

As to Movant, Counsel testified that he was appointed to his case before the plea hearing because Movant "had gotten sideways" with his previous attorney, Richard Weaver. Counsel was appointed to address concerns of mental health and to work on the aggravated offense deals and was eventually able to negotiate a plea deal for Movant. Counsel reported that he went over the plea paperwork with Movant multiple times and felt confident Movant understood what was in the plea agreement. Counsel noted that Movant asked more questions about the plea agreement than his other clients normally do. Counsel testified that he specifically discussed the waiver of the right to appeal with Movant. Counsel also felt it important to address the appeal waiver because Movant was pleading to a high sentence due to the amount of time that could be received by stacking the § 924(c) offenses. Counsel noted that the only ground on which Movant could appeal was the stacking of the § 924(c) offenses, which would be in direct contravention to Fifth Circuit and Supreme Court precedent. Counsel unequivocally stated that if Movant had asked him to file an appeal, he would have done it.

After Movant pleaded guilty and was sentenced on October 30, 2017, Counsel met with Movant on November 6, 2017, at the Collin County Jail. Counsel testified that he and Movant discussed either appealing or continuing to cooperate with the government; at the end of the meeting, Movant decided not to file an appeal. Counsel testified under oath that he never received the letter purportedly sent by Movant on November 7, 2017. Counsel stated that he has never had problems getting letters from other defendants, has received multiple letters from Movant, and also has not had an address change or moved offices since he received other letters from Movant. Counsel received a phone call from Movant a few weeks after the November 6, 2017 meeting, an

REPORT AND RECOMMENDATION – Page 13

appeal was not requested during this phone call, and Counsel did not hear from Movant again until he filed his letter with the Court in January 2018.

Counsel testified that had Movant requested he file an appeal, or had he received the purported November 7, 2017 letter, he would have taken the necessary steps of filing an appeal. Counsel told the Court that it is his practice to file an appeal when requested, regardless of the merits. Counsel stated that at no time did he receive direction from Movant, either by letter or phone call, to file an appeal. Further, Counsel reported that he also did not speak with Movant's family about an appeal during the fourteen days after sentencing. In sum, Counsel testified he would have filed an appeal if directed by Movant, but that at no time did Movant ask that he file an appeal following sentencing.

**Mr. Morrow's Testimony**

Mr. Morrow testified that he was in contact with Counsel before and after sentencing, including that he talked with Counsel after sentencing to receive documents related to his son's case. Mr. Morrow further testified that he told Counsel his son wanted to file an appeal sometime after sentencing but was unable to remember when he advised Counsel of this request; he did not recall if it was within the fourteen days after sentencing. Mr. Morrow stated he never heard anything back from Counsel about filing an appeal.

Mr. Morrow further testified that he did not write his affidavit; instead, Movant wrote the document for him. Mr. Morrow explained that he told Movant what he wanted in the affidavit and had Movant type it up for him. Movant then mailed the affidavit to Mr. Morrow, who reviewed it and signed it in front of a notary. Of note, Mr. Morrow did not include in his affidavit that he requested Counsel to file an appeal on his son's behalf but agreed at Hearing that would have been

important to include.  Mr. Morrow further explained that the information included in the affidavit was about both Counsel and Mr. Weaver, but was unable to clarify further.

### Movant's Testimony

Movant confirmed that he went over the plea agreement with Counsel and understood that the counts he was pleading to would be stacked, but that each count was a lower sentence than provided for by the guidelines.  Movant recalled signing the plea agreement and the waivers contained therein.  Movant testified that he remembers both the undersigned and District Judge Crone discussing the appeals waiver contained in his plea agreement.  Movant stated he wanted Counsel to file an appeal on his behalf, regardless of the merit.  Movant confirmed that he met with Counsel on November 6, 2017.  Movant testified that he told Counsel to file an appeal at this meeting, but also that he was under the impression he could not appeal at all after his conversation with Counsel.

As to the November 7, 2017 letter, Movant testified that he had "CO Lewis" make a copy of the letter and sent the original to Counsel, keeping the copy for himself, which is how he was able to attach it to his reply. [10]  Movant confirmed that he sent Counsel other letters which he received, and that he had the correct address for Counsel.  Movant also confirmed that he did not attach the November 7, 2017 letter to any prior filings, and that the first time anyone in the Court system saw the November 7, 2017 letter was when he filed his reply in October 2018.  Movant confirmed there is no copy of the envelope for the November 7, 2017 letter and no proof of mailing.

### Closing Arguments at Hearing

At the conclusion of Hearing, the Court heard closing arguments from both Parties [Dkt. 25 at 2].  Movant's counsel at Hearing, Joseph Mongaras, argued that Counsel did everything

---

[10] Movant testified that he received special access to have his letters copied because he went to school with many of the correctional officers at the Collin County Jail.

correctly up to the point of appeal (he filed objections to the presentence report and tried to get cooperation) but erred in failing to file an appeal. Mr. Mongaras contended that Movant's recollection and the allegations in the writ are consistent with what Counsel testified too, and that even removing the November 7, 2017 letter, the January 2018 letter still shows Movant wanted to file an appeal. Counsel did not act on Movant's request for an appeal in the January 2018 letter, failing to file an out of time appeal or even ask Movant if he wanted to appeal. Mr. Mongaras argued that under *United States v. Pham*, 722 F.3d 320 (5th Cir. 2013), the Court must consider whether Movant reasonably demonstrated to Counsel that he wanted to appeal; the January 2018 correspondence to the Court makes clear Movant wanted to file an appeal.

The Government conversely contended Counsel was effective in this case, arguing that Counsel discussing whether an appeal was in Movant's best interest is exactly what a competent attorney would do. Moreover, Counsel had discussions back and forth about Movant's appellate rights, and Counsel even confirmed he knew, and his practice is, to file an appeal when asked. The Government further contends that the Court should consider that no one saw the November 7, 2017 letter until the October 2018 response; that it is convenient that when it became apparent to Movant he had to show he asked Counsel to file an appeal, he was suddenly able to produce a November 2017 letter. To this point, the Government noted Counsel received each of the other letters Movant sent, but not the "smoking gun" letter, and further that in the affidavit, drafted by Movant for his father, there is no mention of requesting an appeal.

### *Tapp* Issue Analysis

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. art. VI (spelling in original). The Sixth Amendment guarantees a

criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland*, 466 U.S. at 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

Relevant here, "[t]here is no constitutional right to appeal a criminal sentence." *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Counsel "is not burdened by any general duty to perfect an appeal of every criminal conviction." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999) (citing *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993)). But counsel's failure to pursue an appeal can, under certain circumstances, amount to ineffective assistance under *Strickland*. *See Pham*, 722 F.3d at 323 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000)). Notwithstanding, the Court in *Strickland* also stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.*

The first *Strickland* prong in this context "begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *Pham*, 722 F.3d at 323 (quoting *Flores-Ortega*, 528 U.S. at 478). "'Consulting' is a term of art that means 'advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.'" *Id.* If, on the other hand, "counsel fails to consult with the defendant,

the question becomes whether this failure to consult was unreasonable." *Perez v. United States*, No. 3:17-CR-0498-L (BT), 2019 WL 8106161, at *1-2 (N.D. Tex. Nov. 15, 2019), *report and recommendation adopted*, No. 3:17-CR-0498-L, 2020 WL 956297 (N.D. Tex. Feb. 27, 2020). A constitutionally-imposed duty to consult with a defendant about an appeal arises when there is reason to think that a rational defendant would want to appeal, such as when there are nonfrivolous grounds for appeal, or when the defendant has reasonably demonstrated to counsel that he is interested in appealing. *Flores-Ortega*, 528 U.S. at 480.

A defendant can satisfy the second *Strickland* prong by demonstrating that "there is a reasonable probability that but for counsel's deficient failure to consult with him about an appeal, [a defendant] would have timely appealed." *Id.* at 484. "[C]ourts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[.]'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 690). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Pham*, 722 F.3d at 323-24 (quoting *Flores-Ortega*, 528 U.S. at 478). If a defendant proves, by a preponderance of the evidence, that he directed his attorney to file an appeal and it was not filed, prejudice is presumed regardless of the merits and regardless of any appellate waiver. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). To be clear, "[t]he defendant need not show 'that his hypothetical appeal might have had merit.'" *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (quoting *Flores-Ortega*, 528 U.S. at 486). This standard applies even in cases "where a defendant has waived the right to appeal or collateral review." *Id.* (quoting *Tapp*, 491 F.3d at 266). The Fifth Circuit in *Tapp* held that when such a claim is before a court and the record does not conclusively establish whether an appeal was

requested, "an evidentiary hearing on this issue" is necessary. *See Tapp*, 491 F.3d at 266. When a defendant is denied the opportunity to appeal due to ineffective assistance of counsel, the defendant is entitled to an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001). Following *Tapp*, the Fifth Circuit has repeatedly held that it does not matter whether a defendant has a basis for an appeal or that he waived an appeal; instead, the issue is whether counsel failed to file a notice of appeal after being requested to do so. *United States v. Johnson*, 278 F. App'x 317 (5th Cir. 2008); *United States v. Chavez*, 271 F. App'x 391 (5th Cir. 2008); *United States v. Hereford*, 242 F. App'x 251, 252 (5th Cir. 2007).

With this backdrop in mind, the Court's first inquiry is whether Movant's counsel consulted with him about an appeal. *See Pham*, 722 F.3d at 323. Counsel is credible. Here it is clear that Counsel did his due diligence in discussing and explaining the plea agreement and appeal waiver with Movant. *See Sanchez v. United States*, No. 5:18-CR-020-02-C, 2020 WL 5145149, at *8 (N.D. Tex. Apr. 2, 2020) (crediting the testimony of an attorney who testified that the defendant "did not instruct him in the courtroom, post-sentencing, to file an appeal"), *report and recommendation adopted*, No. 5:18-CR-020-02-C, 2020 WL 5110371 (N.D. Tex. Aug. 31, 2020). Indeed, Counsel's testimony establishes that he consulted with Movant multiple times concerning his appellate rights. Thus, because the Court has concluded Movant's counsel consulted with him about filing a notice of appeal, the Court's inquiry turns to whether counsel failed "to follow the defendant's express instructions with respect to an appeal." *Pham*, 722 F.3d at 323-34.

In the instant case, there are no express instructions to file an appeal. The Court credits the testimony of Counsel who testified that Movant did not instruct, nor ever direct him to file an appeal. And that had Movant or his family requested an appeal, he would have filed it. Movant contests the testimony with a November 7, 2017 letter purportedly authored and sent by him to

REPORT AND RECOMMENDATION – Page 19

Counsel. But the Court finds the November 7, 2017 letter authored by Movant to not be credible. Movant produced this letter, containing the exact phrase required, in reply to the Government's response arguing Movant "does not contend, or submit evidence, that he ever *requested* his attorney to file a notice of appeal" [Dkt. 7 at 5 (emphasis in original)]. Crucially, Movant never raised this issue in his original § 2255 motion. Rather, he merely asserts an incorrect statement of law that "failure to file an appeal, [sic] always constitutes ineffective assistance of counsel" [Dkt. 1-1 at 5]. The letter also was not seen by anyone but the Movant until nearly a year after it was allegedly sent, and not until its contents became useful to Movant. Moreover, Movant was unable to produce any evidence that the letter was actually mailed; Counsel denied ever receiving it. In addition, Movant's testimony about his request for an appeal during the November 6, 2017 meeting with Counsel is inconsistent; such statement contradicts both his own testimony and that of Counsel. Movant simultaneously testified that he requested an appeal at the November 6, 2017 meeting, and that he was under the impression he could not appeal at all after his conversation with Counsel. Counsel testified to the contrary, that at the end of the meeting on November 6, 2017, Movant decided not to appeal but rather to continue pursuing cooperation with the Government. The Court also gives little weight to the testimony of Mr. Morrow. While Mr. Morrow made a vague statement that he requested an appeal be filed on his son's behalf, he was unable to tell the Court when such a request was made; and, conceded such fact was not included in his earlier affidavit although such fact was clearly important. Moreover, Mr. Morrow acknowledged the text of the affidavit was prepared by his son, Movant. In sum, there is no credible evidence in the record to reflect that Movant requested Counsel file an appeal.

In closing argument, Mr. Mongaras argued that under *Pham*, the January 2018 letter is enough to indicate that Movant wanted Counsel to file an appeal. 722 F.3d at 320. While *Pham*

does establish that counsel has a duty to consult with their clients once they express an interest in an appeal, *Pham* presents a different situation. *Id.* at 327. In *Pham*, the defendant expressed an interest to his counsel about wanting to appeal immediately following sentencing. *Id.* at 320. The court in *Pham* notes that after sentencing,

> Pham was visibly upset at receiving a prison sentence instead of probation; he said that a prison sentence would kill his wife, who relied on his care; and, while his wife cried nearby, Pham spoke with his counsel and "brought up that he was concerned about getting 60 months and wanted to do something to get less time."

*Id.* at 323. "Counsel responded to Pham that if he would cooperate with the government, he might receive a reduced sentence pursuant to Federal Rule of Criminal Procedure 35. At no point after sentencing, however, did counsel mention or discuss the possibility of a direct appeal, and no notice of appeal was filed." *Id.* The Fifth Circuit found that "[b]ecause counsel failed to consult with his client about an appeal [under these circumstances], counsel's performance was objectively unreasonable under *Flores–Ortega.*" *Id.* at 326-27. *Pham* is distinguishable from the instant case on at least three grounds: (1) Movant did not express an interest in appealing directly after sentencing; (2) Counsel met with Movant a week after sentencing and discussed an appeal with Movant, at which time Movant decided not to go forward with filing an appeal; and (3) the January 2018 letter is not a request for Counsel to file an appeal. The January 2018 letter asks only "What are my right's [sic] to APPEAL?" [Dkt. 9-4 at 3]. Moreover, by that time, Movant's time to file a direct appeal had long passed. "A notice of appeal in a criminal case must be filed within fourteen days of the entry of the order from which the appeal is taken." *United States v. Ramos Juarez*, 960 F.3d 709, 710 (5th Cir. 2020) (citing FED. R. APP. P. 4(b)(1)(A)). The judgment in Movant's criminal case was entered on entered October 31, 2017. Thus, the January 2018 letter, received by the post office on January 31, 2018, was filed approximately ninety-one days after entry of judgment. *Pham* is inapplicable to the instant case.

REPORT AND RECOMMENDATION – Page 21

After reviewing the evidence in the record and evaluating the credibility of the witnesses at the *Tapp* hearing, the Court finds that Counsel was credible, and Movant failed to meet his burden of showing by a preponderance of the evidence that he directed Counsel to file an appeal. Accordingly, Movant fails to show Counsel was ineffective in this regard, or that Movant is entitled to an out-of-time appeal pursuant to *Tapp*.  *See Morales-Alcaraz v. United States*, No. 4:14-CR-147(4), 2020 WL 5797710, at *7 (E.D. Tex. Aug. 13, 2020) (crediting the movant's counsel's testimony and concluding the movant "failed to meet his burden of showing by a preponderance of the evidence that he directed Counsel to file an appeal"), *report and recommendation adopted*, No. 4:14CR147(4), 2020 WL 5766739 (E.D. Tex. Sept. 28, 2020).

## NON-COGNIZABLE CLAIM UNDER 28 U.S.C. § 2255

Finally, Movant argues that the "Movant's counsel failed to advise that the FOIA/PA waiver contained in the plea agreement was unconstitutional and that such waiver was not required to receive a plea agreement" [Dkt. 1 at 6].  He further argues that, based upon the inclusion of the FOIA/PA waiver, the plea agreement is "unenforceable" [Dkt. 1-1 at 7-8].  The Government contends that this ground for relief raised by Movant "is not cognizable in a section 2255 proceeding; [Movant] is not challenging his conviction of the sentence imposed by this Court but simply a provision in his written plea agreement with the government" [Dkt. 7 at 6].  The Court agrees. As noted above, a motion under § 2255 only provides relief for a petitioner who can establish that either: "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Abreu-Rodriguez v. United States*, No. 2:16-CR-80-Z, 2020 WL 7046851, at *1 (N.D. Tex. Nov. 30, 2020) (citing *Seyfert*, 67 F.3d at 546).  Movant's challenge to the

REPORT AND RECOMMENDATION – Page 22

constitutionality of the FOIA waiver in his plea agreement falls under none of the above listed categories, and thus the Court finds this is not a cognizable claim under § 2255.

In addition, Movant's claim that the FOIA waiver is unconstitutional is procedurally barred from consideration in § 2255 proceedings. *Guerra-Cantu v. United States*, No. 7:11-CR-786-1, 2015 WL 10319087, at *5 (S.D. Tex. Nov. 25, 2015) (citing *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000)), *report and recommendation adopted*, No. 11-CR-786-1, 2016 WL 642364 (S.D. Tex. Feb. 18, 2016). A district court may consider a defaulted claim only if the petitioner can demonstrate either: (1) cause for his default and actual prejudice; or (2) that he is actually innocent of the crime charged. *Moreno-Dominguez v. United States*, No. 7:08-CR-1697-4, 2017 WL 3190728, at *6 (S.D. Tex. May 25, 2017), *report and recommendation adopted*, No. CR M-08-1697-4, 2017 WL 3168362 (S.D. Tex. July 25, 2017); *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Movant did not file a direct appeal, and he has not made a showing of cause and prejudice to overcome his default. In short, Movant's argument regarding the FOIA/PA waiver is both non-cognizable and procedurally barred, and thus it should not be considered in this § 2255 action.

### CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, it is respectfully recommended that the court *sua sponte* address whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (concluding it is "perfectly lawful" for a district court to *sua sponte* deny a certificate of appealability). A certificate

of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a [certificate of appealability] should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* In this case, the Court is of the opinion that reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Accordingly, it is respectfully recommended that the Court find that Movant is not entitled to a certificate of appealability as to the claims raised.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Movant Jimmie Ray Morrow's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 [Dkt. 1] be **DENIED** and this case be **DISMISSED WITH PREJUDICE**. It is further recommended that a certificate of appealability be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

REPORT AND RECOMMENDATION – Page 24

specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 31st day of March, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION – Page 25